# EXHIBIT 1B

## IN THE CIRCUIT CIVIL COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, COUNTY DIVISION

PAULA M. OGURKIEWICZ

**Plantiff**

v.

ULTA BEAUTY, INC.

**Defendant**

**No.**

> **ELECTRONICALLY FILED**
> **3/7/2018 9:06 AM**
> **2018-CH-03006**
> **CALENDAR: 14**
> **CIRCUIT COURT OF**
> **COOK COUNTY, ILLINOIS**
> **CHANCERY DIVISION**
> **CLERK DOROTHY BROWN**

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be fi led with the initial complaint in all actions fi led in the General Chancery Section of Chancery Division. The information contained herein is for administra-tive purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005 ☐ Administrative Review
0001 ☑ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

| | | | | |
|---|---|---|---|---|
| 0007 | ☐ General Chancery | 0019 | ☐ Partition |
| 0010 | ☐ Accounting | 0020 | ☐ Quiet Title |
| 0011 | ☐ Arbitration | 0021 | ☐ Quo Warranto |
| 0012 | ☐ Certiorari | 0022 | ☐ Redemption Rights |
| 0013 | ☐ Dissolution of Corporation | 0023 | ☐ Reformation of a Contract |
| 0014 | ☐ Dissolution of Partnership | 0024 | ☐ Rescission of a Contract |
| 0015 | ☐ Equitable Lien | 0025 | ☐ Specific Performance |
| 0016 | ☐ Interpleader | 0026 | ☐ Trust Construction |
| 0017 | ☐ Mandamus | 0027 | ☐ Foreign Transcript |
| 0018 | ☐ Ne Exeat | 0085 | ☐ Petition to Register Foreign Judgment |
| | | | ☐ Other (specify) |

**By:** /s LOUIS CAREY LUDWIG

☑ **Atty. No.:** 38571     ☐ **Pro Se 99500**
**Name:** POMERANTZ HAUDEK BLOCK
**Atty. for:** PAULA M. OGURKIEWICZ
**Address:** 10 S LASALLE#3505
**City/State/Zip:** CHICAGO, IL 60603
**Telephone:** (312) 377-1181
**Primary Email Address:**
lcludwig@pomlaw.com
**Secondary Email Address(es):**

**Pro Se Only:** ☐ **I have read and agree to the terms of the** *Clerk's Office Electronic Notice Policy* **and choose to opt in to electronic notice from the Clerk's office for this case at this email address:**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
CALENDAR: 14
PAGE 1 of 40
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| PAULA M. OGURKIEWICZ, individually, and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | Judge: |
| -v- | **CLASS ACTION COMPLAINT** |
| ULTA BEAUTY, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Paula M. Ogurkiewicz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel at Pomerantz LLP, brings this class action for damages and equitable relief against Ulta Beauty, Inc. ("Ulta" or "Whirlpool"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE CASE

1.     Defendant Ulta operates a chain of beauty stores throughout the United States offering cosmetics, fragrance, skin care products, hair care products, and salon services. As of October 28, 2017, Ulta Beauty operates 1,058 retail stores across 48 states and the District of Columbia and also distributes its products through its website, www.ulta.com.

2.     However, unbeknownst to consumers and contrary to the Company's public representations, Ulta stores surreptitiously resell used and outdated beauty products to consumers. Thus, the Company's marketing and advertising of its beauty products is false, deceptive and misleading to reasonable consumers who believe that they are purchasing new, unused, and

previously unopened cosmetics. Moreover, the resale of used beauty products jeopardized the health and wellbeing of Ulta consumers.

3.     Following a torrent of social media postings by concerned Ulta customers and former Ulta employees, media outlets began to report in early 2018 that Ulta stores routinely doctored used beauty products, many of which had been used and returned to the store, in order to deceive consumers into believing the products were new and unused. The practice was driven by a desire to increase profits and reduce loses from returned and previously used products. According to media reports, at the store level the practice of reselling used beauty products was orchestrated by "higher-level managers" in order to "keep the dollar amount for damaged or returned goods down."[1] By way of example, former Ulta employees reported using cotton swabs to make used cosmetics appear to be new.[2]

4.     In Plaintiff's case, she purchased cosmetics at multiple Ulta locations which she believed to be new and unused at the time of purchase, only to later discover that the products were, in fact, old, dried out and/or previously used. For example, Plaintiff purchased hair dye from the clearance section at an Ulta retail store in Bolingbrook, Illinois which, after purchase, she discovered was dried out and unusable. In addition, Plaintiff purchased mascara from the regular, full price section at an Ulta retail store in Downers Grove, Illinois which Plaintiff discovered was dried out and unusable after purchasing. Moreover, Plaintiff also purchased lip cream from an Ulta retail store in Downers Grove, Illinois which, upon information and belief, had been previously used and repacked in such a manner as to make Plaintiff believe that the lip cream was new and unused. Plaintiff understood that the lip cream was new and unused at the time of purchase. Thus, Plaintiff purchased cosmetics from both the full price and the discount sections of Ulta retail locations which, upon information and belief, were previously used and unsuitable for resale.

5.     Additionally, Plaintiff is a member of the Ulta "Ultamate Rewards®" loyalty program. According to the Company, the Ultamate Rewards program has approximately 23 million active members and generated more than 90% of Ulta Beauty's annual total net sales in fiscal 2016. Ultamate Rewards members can earn "Platinum" or "Diamond" status based on the amount the

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 2 of 40

---

[1] https://www.cbsnews.com/news/ulta-beauty-former-manager-admits-to-reselling-used-products/
[2] *Id.*

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 3 of 40

consumer spends per calendar year with Ulta.  Members also earn points with every purchase, which can be redeemed towards future purchases.

6.     Upon information and belief, Plaintiff used points earned though the Ultamate Rewards program to purchase a moisturizer at an Ulta retail location in Downers Grove, Illinois which, unbeknownst to Plaintiff at the time of purchase, had been previously used and deceptively resold as new by the Company.

7.     Moreover, Ulta represents to Ulta consumer that its policies "do[] not permit the resale of used, damaged or expired products."[3] However, Plaintiff has, on numerous occasions, purchased beauty products, both from the full-price and from the clearance section of Ulta retail stores, which were in fact expired.  Upon information and belief, Ulta continues to sell expired cosmetics at its retail locations.

8.     As a result, Plaintiff and members of the Damages Class and the Ultamate Rewards Damages Class, defined herein, unknowingly purchased used and/or expired beauty products from Ulta, erroneously believing those products to be new and unused.

9.     In addition, as long as Ulta continues to surreptitiously resell used and expired beauty products to its customers, Plaintiff and Injunctive Relief Class members are at risk of purchasing used beauty products from Defendant in the future.

10.     Accordingly, Plaintiff, individually, on behalf of all other similarly situated individuals, brings this lawsuit seeking injunctive relief and damages, as well as reasonable attorneys' fees and costs.

## PARTIES

11.     Plaintiff Paula M. Ogurkiewicz is a natural person and citizen of Cook County, Illinois.  Plaintiff spends hundreds of dollars per year at Ulta locations in and around the Cook County, Illinois area.

12.     Defendant Ulta Beauty, Inc. is a corporation incorporated in and existing under the laws of the State of Delaware, with its principal place of business located at 1000 Remington Boulevard, Bolingbrook, Illinois 60440. Ulta does business in the State of Illinois, Cook County, and nationwide.

---

[3] https://www.ulta.com/ulta/guestservices/guestServicesCenterDetails.jsp

## JURISDICTION AND VENUE

13.    Jurisdiction over Defendant is proper under 735 ILCS 512-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

14.    Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the county in which the transactions and occurrences at issue, or some part thereof, occurred. In addition, Defendant is a corporation doing business in this County. 735 ILCS 5/2-102(a).

## SUBSTANTIVE ALLEGATIONS

### *Ulta's Practice of Selling Used Beauty Products*

15.    Ulta is a beauty retailer that sells, *inter alia,* cosmetic, fragrance, skin care, and hair care products ("Beauty Products") at its retail locations and on the internet.

16.    If a purchaser of Ulta's Beauty Products is unsatisfied with his or her purchase, Ulta permits that customer to return those Beauty Products at its retail stores.

17.    On information and belief, when customers return Beauty Products to Ulta's retail stores, Ulta's employees are required to ask customers if the Beauty Products being returned had previously been used.

18.    On information and belief, if a customer indicates that a returned Beauty Product has been used, or it appears as if a returned Beauty Product has been used, Ulta's employees are to deem the product "damaged," and place it into a "damage bin."

19.    On information and belief, managers at Defendant's retail stores are given a quota as to the number of returned items that can be deemed to be "damaged." According to a *Business Insider* article, "a former manager for an Ulta location in Ohio" stated that Ulta "always had a percentage [it] wanted you to stay below weekly in what we damaged. We would literally get lectured by our boss on our conference calls if our stores were over." Another former employee

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 4 of 40

noted that "managers would get [angry] if they saw items in the damage bin that looked [like they could be resold]."[4]

20. According to a *CBS News* report, a former Ulta employee reported "higher-level managers pressured the stores to keep the dollar amount for damaged or returned goods down." The former Ulta employee reported that the issues were systemic, stating that "[w]e had other managers come in from other stores and they were saying 'OK, yeah, you need to clean all these returns, you need to clean this, this is how you're going to get your numbers down,' and it was all a numbers game." The former Ulta employee reported that employees would "clean" used beauty products with cotton swabs and repackage them so that they appeared to be new.[5]

21. As a result of that policy, Ulta's managers and other employees were routinely instructed to, and did, restock used Beauty Products and sold them as new. For example:

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 5 of 40

    a. One of Ulta's former employees posted on Twitter that Ulta had a routine practice of instructing its employees to repackage and reseal used Beauty Products and return them to Ulta's store shelves for resale. In support of that contention, she went on to post screenshots of other employees who said that they observed these practices while working at several of Defendant's locations. [6]

    b. Another former employee wrote that "I can assure everyone reading...that this 100% happens at every Ulta. I work[ed] for Ulta for four years at three different stores and it happened at every one. I remember...taking used makeup off the shelves" and "managers would follow behind me and put stuff back on the shelves."[7] [8]

    c. A former manager at one of Ulta's retail locations also stated that she "was in management at Ulta for 3 years and yes, it happened routinely at my store."

    d. Another former manager recalled that "our bosses constantly told us if it looked like it could be sold, put it back out."[9]

---

[4] http://www.businessinsider.com/ulta-employees-have-accused-the-company-of-selling-used-makeup-2018-1

[5] https://www.cbsnews.com/news/ulta-beauty-former-manager-admits-to-reselling-used-products/

[6] https://twitter.com/fatinamxo/status/950931112007741440

[7] https://twitter.com/sarahsunshinevt/status/9S1285792529268736

[8] https://twitter.com/sarahsunshinevt/status/951286184990294016

[9] https.7/www .todav.com/stvle/ultabeautv-accused-reselling-used-makeup-products-t 121386

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 6 of 40

22.    Beauty Products—such as mascara, foundation, and shampoo—"were almost always placed back on the shelf since it was difficult to tell if they were used,"[10] according to the aforementioned former manager at one of Defendant's retail stores in Ohio. For example:

    a.    That former manager's "staff would clean bottled products to make them look like new again," such as by "wip[ing] out the spout [of the shampoo bottle] and turning] -the pump cap back down."[11]

    b.    Another former employee recalled that Defendant "would make us take [returned products] out of the packaging and check for use," and if a Beauty Product didn't look "clearly used", it was placed "back on the shelf" for sale.

    c.    One of Ulta's customers recalled an instance where she told a cashier she had lightly used a Beauty Product and the cashier responded by saying "great we can still sell it."[12]

23.    However, Ulta "would resell EVERYTHING (makeup, hair care, skincare, fragrance, hair tools, etc.)," even Beauty Products that were obviously, and visibly appeared to be, used. In that case, Defendant's employees were instructed to clean those Beauty Products with cotton swabs "to make [them] look [like] new," and place those Beauty Products back on Defendant's store shelves for resale.[13][14][15]

24.    Based on the foregoing, Ulta's routine practice of reselling used Beauty Products was prevalent at many of Ulta's retail locations, and applied to a variety of different Beauty Products. According to at least one of Defendant's customers, that routine practice has been in existence for over three years.

25.    Moreover, because Ulta's employees actively engaged in repackaging, resealing, and reconditioning used Beauty Products before placing those used Beauty Products back on Ulta's shelves amongst new Beauty Products, Defendant knew that it was selling used Beauty Products to consumers.

---

[10] htto://www.businessinsider.com/ulta-employees-haveaccused-the-comDanv-of-selling-used-makeup-2018-1

[11] *Id*.

[12] *Id*.

[13] https://twitter.com/fatinamxo/status/950931125282705411

[14] https://twitter.com/fatinamxo/status/950931144610066433

[15] https://twitter.com/fatinamxo/status/950931147558653952

26.     Ulta also knew that its employees were engaged in the aforementioned practices, as it received and responded to complaints from customers and employees regarding those practices.

27.     Despite the fact that Ulta has known about the aforementioned practices for over three years, Ulta has not created, implemented and enforced any policy changes that would stop those practices from occurring, and those practices continue to this day.

### *Whether a Beauty Product Has Been Used Is a Material Fact to Consumers*

28.     Consumers expect that Beauty Products are new and unused when purchased from retailers, such as Defendant, because, by nature, used Beauty Products are unsanitary and unhygienic, and place them at a risk of contracting disease.

29.     Indeed, according to an undercover report published by *Today*, wherein an investigator tested used Beauty Products obtained from popular retailers, including Ulta, used Beauty Products were found to have been contaminated "with harmful bacteria, including E. coli and Klebsiella pneumoniae, two types of bacteria normally found in the intestinal tract that are expelled with feces," such that a person "could literally be applying and smearing someone else's fecal matter directly onto [her] lips." Used Beauty Products can also contain the herpes simplex virus—which "can survive on the surface of a lipstick tube for up to a week"—as well as "Staphylococcus aureus, which can cause very serious infections, boils and lesions, especially if you have an open cut on your skin or lips, or it gets in your eyes."[16]

30.     Consumers also expect that Beauty Products are new and unused when purchased from retailers, such as Ulta, because Beauty Products are consumable items—i.e., they can be used only once.

31.     Indeed, Illinois and federal law define Beauty Products, such as those sold by Defendant, as "cosmetics," and regulate Beauty Products consistent with the aforementioned expectations of consumers. 410 ILCS 620/2.6; 21 U.S.C. § 321(i).

32.     For example, Illinois and federal law prohibit the sale of "adulterated" cosmetics. 21 U.S.C. § 331(a)-(c); 410 ILCS 620/3 (incorporating 410 ILCS 620/3.1, 410 ILCS 620/3.2, and 410 ILCS 620/3.3). A cosmetic is "deemed to be adulterated" if, *inter alia,* it has been "held under

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 7 of 40

---

[16] https://www.todav.com/health/beware-store-makeup-sainp]es-mav-harbor-harmful-bacteria-tl 18860

insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 361(c); 410 ILCS 620/18(c).

33.     In addition, Illinois and federal law prohibit "the alteration...of the labeling of, or the doing of any other act with respect to a...cosmetic...while such article is held for sale (whether or not the first sale)...and results in such article being adulterated or misbranded." 21 U.S.C. § 331(k); 410 ILCS 620/3.9. A cosmetic is "deemed to be misbranded" if, *inter alia,* "its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 362(d); 410 ILCS 620/19(d).

34.     As such, when consumers purchase Beauty Products from retailers, such as Defendant, consumers expect that (1) Beauty Products will not be adulterated or place them at risk of contracting disease—e.g., that they are unused—(2) the quantity reflected on Beauty Products' packaging will be accurate—e.g., that none of the contents has been consumed by prior use—and (3) the Beauty Products' packaging will be free from alterations and tampering.

35.     Moreover, the Illinois Salvage Warehouse and Salvage Warehouse Store Act ("Illinois Salvage Act")—codified as 240 ILCS 30/1, *et seq.—imposes* strict requirements for the sale of salvaged and reconditioned cosmetics, including the requirement that such merchandise "be labeled, at a minimum, with the word 'salvaged' and shall indicate on the label the date of salvaging." 77 III.Admin.Code § 725.51 (as incorporated by 240 ILCS 30/5).

36.     Consistent with the requirements of the Illinois Salvage Act, and the regulations promulgated pursuant thereto, in the absence of a label stating that a particular Beauty Product has been salvaged, consumers expect that Beauty Products sold by retailers are new and unused.

37.     Consumers would not purchase a particular Beauty Product if it did not meet the aforementioned expectations.

38.     As such, the fact that a Beauty Product has been previously used is a material fact to consumers.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 8 of 40

8

### *Defendant Intentionally Misrepresented Used Beauty Products as New*

39.    Consumers reasonably believed that Ulta would sell Beauty Products in conformance with applicable law, such that, by virtue of offering a particular Beauty Product for sale in its retail stores, that Beauty Product would be new and unused.

40.    Ulta knew that, by virtue of offering Beauty Products for sale in its retail stores, consumers would believe that those Beauty Products were new and unused.

41.    Moreover, indicia such as whether a Beauty Product (1) was stored in sealed, clean packaging, (2) appeared to be in smooth, pristine condition, (3) was available for sale amongst other new Beauty Products, and (4) was not labeled as being salvaged, also indicated to consumers that a particular Beauty Product was new and unused.

42.    Ulta knew that, by offering Beauty Products for sale that (1) were stored in sealed, clean packaging that did not indicate that those Beauty Products had been salvaged, (2) appeared to be in smooth, pristine condition, and (3) were displayed amongst other new Beauty Products, consumers would believe that those Beauty Products were new and unused.

43.    In light of the foregoing, by repackaging, resealing, and reconditioning used Beauty Products, failing to label them as salvaged or previously used, and then offering them for sale amongst new Beauty Products, Ulta necessarily represented to consumers that those used Beauty Products were new and unused.

44.    Accordingly, Ulta misrepresented to consumers that used Beauty Products were new and unused, even though they were not.

45.    Ulta also failed to disclose, and actively concealed, the material fact that it was offering used Beauty Products for sale to consumers. Indeed, Ulta did not label those used Beauty Products as having been repacked, salvaged, or previously used, despite the fact that—for the reasons stated above—it was representing that those used Beauty Products were new and unused.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 9 of 40

46.     Due to the misrepresentations and omissions described herein, consumers—including Plaintiff and members of the Damages Class defined below—reasonably believed that the Beauty Products they purchased were, in fact, new and unused.

47.     Defendant intended for consumers—including Plaintiff and members of the Damages Class defined below—to rely on the aforementioned misrepresentations and omissions when they purchased Beauty Products from Ulta's retail stores because Ulta knew that consumers would not be willing to purchase used Beauty Products.

### *Ulta's Deceptive Marketing*

48.     In addition to the deceptive marking described above, Plaintiff received regular offers from Ulta for free beauty products, redeemable at Ulta retail locations.  However, when Plaintiff attempted to redeem such offers, she discovered that the Ulta stores she visited never received the promotional items.  On occasion, the store clerks knew nothing of these promotions. Accordingly, such promotions for "free" Beauty Product were in fact deceptive marketing techniques designed to lure consumers into Ulta stores under false pretenses.

49.     Moreover, despite its public claims to the contrary, Ulta has sold and continues to sell expired and outdated merchandise in its retail locations.  Often, consumers are unable to discern that the Beauty Products are used until after purchase.

50.     Therefore, as long as Ulta continues to surreptitiously sell expired Beauty Products to its customers, consumers—including Plaintiff and members of the Injunctive Relief Class defined below—will be at a risk for harm because they may unknowingly purchase expired Beauty Products, which will further subject them to the economic and non-economic damages described above.

### *The Harm to Plaintiff and Class Members*

51.     As a result of, and in reliance on, Ulta's misrepresentations and omissions, consumers—including Plaintiff and members of the Damages Class defined below—purchased used Beauty Products from Ulta under the mistaken belief that they were purchasing new, unused Beauty Products.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 10 of 40

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 11 of 40

52.     As a result of this deception, consumers—including Plaintiff and members of the Damages Class defined below—purchased used Beauty Products that they otherwise would not have purchased.

53.     Accordingly, consumers—including Plaintiff and members of the Damages Class defined below—suffered economic damages in the form of monies spent to purchase used Beauty Products from Ulta.

54.     In addition, consumers—including Plaintiff and members of the Damages Class defined below—suffered other non-economic damages in the form of emotional distress arising from the fact that they were deceived into purchasing used Beauty Products from Defendant that were unsanitary and unhygienic.

### *The Risk of Future Harm to Plaintiff and Class Members*

55.     Due to reasons such as brand loyalty, membership in Ulta's customer rewards program, or necessity, consumers—including Plaintiff and members of the Injunctive Relief Class defined below—will continue to shop at Ulta's retail stores.

56.     However, due to Ulta's routine practice of repackaging, resealing, and reconditioning used Beauty Products, not labeling them as being salvaged or previously used, and then offering them for sale amongst new Beauty Products, consumers—including Plaintiff and members of the Injunctive Relief Class defined below—cannot distinguish between new Beauty Products, which they would be willing to purchase, and used Beauty Products, which they would not be willing to purchase.

57.     Therefore, as long as Ulta continues to surreptitiously resell used Beauty Products to its customers, consumers—including Plaintiff and members of the Injunctive Relief Class defined below—will be at a risk for harm because they may unknowingly purchase used Beauty Products, which will further subject them to the economic and non-economic damages described above.

### **Plaintiff's Experience with Used Ulta Beauty Products**

58.     Plaintiff is a frequent customer at Defendant's retail stores located in the Chicago, Illinois area, and routinely purchases various Beauty Products described herein.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 12 of 40

59.     On information and belief, Defendant's retail stores in the Chicago, Illinois area engaged, and continue to engage, in the conduct described herein, and made, and continue to make, the same misrepresentations and omissions complained of.

60.     Prior to becoming aware of the revelations made by Defendant's employees and former employees described above, Plaintiff reasonably believed that all of the Beauty Products offered for sale at Defendant's retail stores were new and unused.

61.     As referenced above, Plaintiff purchased various Beauty Products from Ulta retail stores in Bolingbrook, Illinois and Downers Grove, Illinois which, upon information and belief, had been previously used and repackaged, unbeknownst to Plaintiff at the time of purchase.  These products include, among others, lip cream and moisturizer.

62.     Moreover, Plaintiff is a member of the Ulta "Ultamate Rewards®" loyalty program. As referenced above, the Ultamate Rewards program has approximately 23 million active members and generated more than 90% of Ulta Beauty's annual total net sales in fiscal 2016.  Ultamate Rewards members can earn "Platinum" or "Diamond" status based on the amount the consumer spends per calendar year with Ulta.  Members also earn points with every purchase, which can be redeemed towards future purchases.

63.     Plaintiff has accumulated thousands of redeemable Ultamate Rewards points worth hundreds of dollars.  Upon information and belief, Plaintiff used these points to purchase cosmetics that had been previously used and repackaged to appear new.  Plaintiff thus seeks to represent a class of Ultamate Rewards loyalty members who were likewise deceived into using their redeemable points towards the purchase of used cosmetics.

64.     When Plaintiff purchased used Beauty Products from Ulta, Plaintiff believed them to be new and unused, as a result of, and in reliance on, Ulta's misrepresentations and omissions described herein.

65.     Indeed, Plaintiff would not have purchased used Beauty Products had she known that they were, in fact, used.

66.     Accordingly, Plaintiff suffered economic damages in the form of monies spent to purchase used Beauty Products from Defendant, and non-economic damages in the form of emotional distress arising from the fact that she was deceived into purchasing Beauty Products that were unsanitary and unhygienic.

67.     As such, Plaintiff, individually, and on behalf of the Damages Class and the Ultamate Rewards Damages Class, defined herein, seeks damages that resulted from Defendant's misrepresentations and omissions set forth herein.

68.     Moreover, due to reasons such as brand loyalty, membership in Defendant's customer rewards program, or necessity, Plaintiff intends to continue to shop at Defendant's retail stores in the Chicago, Illinois area, and nationwide.

69.     However, due to Defendant's routine practice of repackaging, resealing, and reconditioning used Beauty Products, not labeling them as being salvaged or previously used, and then offering them for sale amongst new Beauty Products, Plaintiff has no way to distinguish between new Beauty Products, which she would be willing to purchase, and used Beauty Products, which she would not be willing to purchase.

70.     Accordingly, Plaintiff, individually, and on behalf of the Injunctive Relief Class defined herein, also seeks an order enjoining Defendant from engaging in the practices set forth herein.

71.     In addition to monetary and injunctive relief, Plaintiff, individually, and on behalf of the Classes defined herein, seeks reasonable attorneys' fees and costs incurred in connection with this action.

## CLASS ALLEGATIONS

72.     **Damages Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2801 seeking damages on behalf of herself and a nationwide Class of similarly situated individuals, defined as follows:

All consumers who purchased used Beauty Products from Defendant.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 13 of 40

Excluded from the Damages Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Damages Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

73. **Ultamate Rewards Damages Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2801 seeking damages on behalf of herself and a nationwide Class of similarly situated individuals, defined as follows:

All consumers who used Ultamate Rewards points towards the purchase of used Beauty Products from Defendant.

Excluded from the Ultamate Rewards Damages Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ultamate Rewards Damages Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

74. **Illinois Damages Subclass Definition:** As a Subclass of the Damages Class defined above, Plaintiff brings this action pursuant to 735 ILCS 5/2-801 seeking damages on behalf of herself and a Subclass of similarly situated individuals in Illinois, defined as follows:

All Illinois consumers who purchased used Beauty Products from Defendant.

Excluded from the Illinois Damages Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Illinois Damages Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

66. **Injunctive Relief Class Definition:** In addition to the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass defined above, Plaintiff brings this action pursuant to 735 ILCS 5/2-801 seeking injunctive relief on behalf of herself and a nationwide Class of similarly situated individuals, defined as follows:

All consumers who will purchase Beauty Products from Defendant in the future.

Excluded from the Injunctive Relief Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 14 of 40

14

controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Injunctive Relief Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

67.     **Illinois Injunctive Relief Subclass Definition:** As a Subclass of the Injunctive Relief Class defined above, Plaintiff brings this action pursuant to 735 ILCS 5/2-801 seeking injunctive relief on behalf of herself and a Subclass of similarly situated individuals in Illinois, defined as follows:

> All Illinois consumers who will purchase Beauty Products from Defendant in the future.

Excluded from the Illinois Injunctive Relief Subclass are: (I) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this Case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Illinois Injunctive Relief Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

68.     Collectively, the Damages Class, the Ultamate Rewards Damages Class, the Illinois Damages Subclass, the Injunctive Relief Class, and the Illinois Injunctive Relief Subclass, will hereinafter be referred to as the "Classes," where appropriate.

69.     **Numerosity:** Upon information and belief, the Classes are so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of members of the Classes is presently unknown and can only be ascertained through discovery because that information is exclusively in the possession of Defendant. However, Plaintiff believes that each of the Classes consists of thousands of individuals because Defendant "is the largest beauty retailer in the United States" and, as of October 28, 2017, operated "1,058 retail stores across 48 states and the District of Columbia." Members of the Classes can be easily identified through Defendant's records or by other means.

70.     **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the members of the Classes. Those common questions

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 15 of 40

predominate over any questions that may affect individual members of the Classes. Common questions include, but are not limited to, the following:

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 16 of 40

a. Whether Defendant had, and continues to have, a common, routine practice of surreptitiously reselling used Beauty Products to its customers, including Plaintiff and members of the Classes;

b. Whether Defendant misrepresented, and continues to misrepresent, that all of its Beauty Products were/are, new and unused when some of those Beauty Products were/are, in fact, used;

c. Whether Defendant failed, and continues to fail, to disclose, and actively concealed, and continues to actively conceal, the fact that it was/is offering used Beauty Products for sale to consumers, including Plaintiff and members of the Classes;

d. Whether Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members purchased used Beauty Products from Defendant;

e. Whether Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members are at risk of purchasing used Beauty Products from Defendant in the future;

f. Whether Defendant's conduct violated, and continues to violate, the Illinois Consumer Fraud and Deceptive Business Practices Act;

g. Whether Defendant's conduct violated, and continues to violate, the Illinois Uniform Deceptive Trade Practices Act;

h. Whether Defendant's conduct constituted a breach of the implied warranties of merchantability and fitness for a particular purpose with respect to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members;

i. Whether used Beauty Products constitute adulterated and/or mislabeled cosmetics under the Illinois Food, Drug and Cosmetic Act;

j. Whether Defendant's conduct violated, and continues to violate, the Illinois Food, Drug and Cosmetic Act;

k. Whether Plaintiff and members of the Classes have an implied cause of action under the Illinois Food, Drug and Cosmetic Act;

l. Whether the fact that a Beauty Product was previously used renders it to be in a defective and unreasonably dangerous condition;

m. Whether Defendant's conduct violated, and continues to violate, the Illinois Salvage Act;Whether Plaintiff and members of the Classes have an implied cause of action under the Illinois Salvage Act;

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 17 of 40

n.      Whether Defendant is strictly liable for the damages sustained by Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members;

o.      Whether Defendant's conduct resulted in unjust enrichment to Defendant at the expense of Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members;

p.      Whether, and to what extent, Plaintiff, Damages Class members, and Illinois Damages Subclass members, Ultamate Rewards Damages Class members, were damaged as a result of Defendants' conduct alleged herein; and

q.      Whether, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members are at risk of future harm as a result of Defendants' conduct alleged herein.

71.     **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

72.     **Appropriateness:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Classes to obtain effective relief because the damages suffered by individual members of the Classes are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions. Even if members of the Classes were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 18 of 40

**COUNT I**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/1,** *et seq.)*
**(On behalf of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and**
**Illinois Damages Subclass)**

73.     Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

74.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.,* provides protection to consumers by mandating fair competition in commercial markets for goods and services.

75.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"). 815 ILCS 505/2.

76.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

77.     Defendant is a "person" as defined by section 505/1(c) of the ICFA.

78.     Plaintiff and each member of the Classes are "consumers" as defined by section 505/1(e) of the ICFA.

79.     Defendant's Beauty Products constitute "merchandise" under the meaning of section 505/1(b) of the ICFA, and their sale is within the meaning of "trade" or "commerce" under the ICFA.

80.     Defendant's routine practice of repackaging, resealing, and reconditioning used Beauty Products before placing those used Beauty Products back on Defendant's shelves amongst new Beauty Products, thereby representing used Beauty Products as being new, is a deceptive act or practice in violation of the 1CFA. 815 ILCS 505/2; *see also,* 815 ILCS 510/2(a)(6) (representing

"that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand").

81.     Defendant's routine practice of failing to disclose, and actively concealing, the material fact that it was offering used Beauty Products for sale to consumers is a deceptive act or practice **in** violation of the ICFA. 815 ILCS 505/2; *see also,* 815 ILCS 510/2(a)(6) (representing "that goods are original or new *if* they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand").

82.     Defendant's routine practice of reselling used Beauty Products is an unfair practice prohibited by the ICFA (815 ILCS 505/2) because reselling used Beauty Products violates the public policy against the sale of adulterated cosmetics, as articulated by Illinois and federal law (21 U.S.C. § 331(a)-(c); 410 ILCS 620/3 (incorporating 410 ILCS 620/3.1, 410 ILCS 620/3.2, and 410 ILCS 620/3.3)).

83.     Defendant's routine practice of repackaging, resealing, and reconditioning used Beauty Products and offering them for sale, as well as not labeling those used Beauty Products as salvaged when offering them for sale, is an unfair practice prohibited by the ICFA (815 ILCS 505/2) because tampering with the labeling of Beauty Products, and failing to designate used Beauty Products as being salvaged, violates the public policy against the sale of misbranded cosmetics, as articulated by Illinois and federal law (21 U.S.C. § 331(k); 410 ILCS 620/3.9; 77 Ill.Admin.Code § 725.51 (as incorporated by 240 ILCS 30/5)).

84.     In addition, due to Defendant's misrepresentations and omissions regarding the fact that some of its Beauty Products have been previously used, consumers have no ability to ascertain whether they are purchasing new, unused Beauty Products, or whether they are purchasing previously used Beauty Products. As a result, consumers have no alternative but to take the risk that they may be purchasing used Beauty Products from Defendant.

85.     In light of the foregoing, Defendant's surreptitious resale of used Beauty Products is an unfair practice prohibited by the ICFA because it is immoral, unethical, oppressive,

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 19 of 40

unscrupulous, and violates statutes and regulations intended to protect the public. 815 ILCS 505/2. Indeed, used Beauty Products are contaminated with disease-causing pathogens, and the sale of used Beauty Products presents a serious public health risk.[17]

86.     Similarly, due to the unsanitary and unhygienic nature of used Beauty Products, Defendant's surreptitious resale of used Beauty Products is an unfair practice prohibited by the ICFA because it causes substantial injury to consumers. For example, in 2015, a California woman sued another major retailer of Beauty Products—Sephora—claiming that she contracted the herpes simplex virus after using used Beauty Products at a Sephora store.[18]

87.     On information and belief, Defendant's routine practice of surreptitiously reselling used Beauty Products to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members arose from Defendant's corporate policy of placing a quota on the number of returned items that can be deemed to be "damaged."

88.     On information and belief, that policy was created, implemented, and enforced by Defendant's corporate managers who are located at Defendant's corporate headquarters in Illinois.

89.     On information and belief, Defendant's corporate managers—who are located at Defendant's corporate headquarters in Illinois—became, and are, aware of the fact that used Beauty Products are routinely Sold at Defendant's retail locations, and those corporate managers have failed to create, implement, and enforce appropriate remedial actions.

89.     Moreover, any future remedial policy intended to discontinue the sale of used Beauty Products at Defendant's retail stores will emanate from, and will be implemented and enforced by Defendant's corporate managers who are located at, Defendant's corporate headquarters in Illinois.

90.     In addition, when consumers—including Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members—

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 20 of 40

---

[17] https://www.today.com/health/beware-store-makeup-samples-may-harbor-harmful-bacteria-t118860
[18] https://www.today.com/health/lawsuit-claims-sephora-lipstick-samples-caused-herpes-tll8296

unknowingly purchase, or will purchase, used Beauty Products from Defendant, their payments were, and are, received at Defendant's corporate headquarters in Illinois.

91.     Whether Beauty Products have been previously used was, and is, a material fact to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members. Indeed, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members would not have been, and are not, willing to purchase used Beauty Products from Defendant.

92.     Defendant knew that whether Beauty Products have been previously used was, and is, a material fact to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, and that they would not have been, and are not, willing to purchase used Beauty Products.

93.     Accordingly, by employing the misrepresentations. and omissions described herein, Defendant intended, and continues to intend, to deceive Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members into purchasing used Beauty Products that they otherwise would not have been, and are not, willing to purchase.

94.     Defendant knowingly, willfully, and repeatedly engaged in the misrepresentations and omissions described herein, and did so with indifference to the rights of Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, even after becoming aware that its retail stores were surreptitiously reselling used Beauty Products to its customers over three years ago.

95.     As a result of Defendant's deception, Plaintiff, Damages Class members, Ultamate Rewards Damages Class, and Illinois Damages Subclass members purchased used Beauty Products that they otherwise would not have purchased.

96.     Therefore, as a direct and proximate result of Defendant's violations of the ICFA, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 21 of 40

Damages Subclass members, suffered economic damages in the form of monies spent to purchase used Beauty Products from Defendant.

97.     Moreover, as a direct and proximate result of Defendant's violations of the ICFA, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, suffered other noneconomic damages in the form of emotional distress arising from the fact that they were deceived into purchasing used Beauty Products from Defendant that were unsanitary and unhygienic.

98.     In addition, due to reasons such as brand loyalty, membership in Defendant's customer rewards program, or necessity, Plaintiff, and at least some of the members of the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass, intend to shop at Defendant's retail stores in the future—i.e., they are also members of the Injunctive Relief Class and/or the Illinois Injunctive Relief Subclass.

99.     As long as Defendant continues to surreptitiously resell used Beauty Products to its customers, Plaintiff, and members of the Damages Class, Ultamate Rewards Damages Class, and Illinois Damages Subclass who are also members of the Injunctive Relief Class and/or the Illinois Injunctive Relief Subclass, will be at a risk for harm because they may unknowingly purchase used Beauty Products, which will further subject them to the economic and non-economic damages described above.

100. Plaintiff, on behalf of herself, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass seeks an order (1) enjoining Defendant from reselling used Beauty Products at its retail stores, and requiring Defendant to cease the deceptive and unfair practices described herein; and (2) awarding actual damages, punitive damages, interest, reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Damages Class, Ultamate Rewards Damages Class, and Illinois Damages Subclass, prays for an Order as follows:

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 22 of 40

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass defined herein;

B.     Designating Plaintiff as representative of the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass, and her undersigned counsel as Class Counsel;

C.     Entering judgment in favor. of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass, and against Defendant;

D.     Enjoining Defendant's illegal, deceptive, and unfair conduct alleged herein;

E.     Awarding Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass actual and punitive damages, in addition to reasonable attorney's fees and costs; and

Granting all such further and other relief as the Court deems just and appropriate.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 23 of 40

## COUNT II
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### (815 ILCS 510/1, *et seg.*)
### (On behalf of Plaintiff, the Injunctive Relief Class, and Illinois Injunctive Relief Subclass)

101.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

102.    At all times relevant hereto, there was in full force and effect the IDTPA—codified as 815 ILCS 510/1, *et seq.*

103.    The IDTPA prohibits deceptive trade practices such as representing "that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand." 815 ILCS 510/2(a)(6).

104.    Defendant, Plaintiff, and each member of the Injunctive Relief Class and Illinois Injunctive Relief Subclass is a "person" as defined by section 510/1(f) of the IDTPA.

105.    By surreptitiously reselling used Beauty Products to consumers—including Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members—Defendant engages in deceptive trade practices in violation of 815 ILCS 510/2(a)(6).

106.    Due to Defendant's misrepresentations and omissions regarding the fact that some of its Beauty Products have been previously used, Plaintiff, Injunctive Relief Class members, and

Illinois Injunctive Relief Subclass members have no ability to ascertain whether they are purchasing new, unused Beauty Products—which they would be willing to purchase—or whether they are purchasing previously used Beauty Products—which they would not be willing to purchase.

107.    However, due to reasons such as brand loyalty, membership in Defendant's customer rewards program, or necessity, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members will continue to shop at Defendant's retail stores. Accordingly, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members are likely to be damaged by Defendant's routine practice of surreptitiously reselling used Beauty Products in the future because they are at risk of unknowingly purchasing used Beauty Products that they would otherwise be unwilling to purchase.

108.    In addition, due to the unsanitary and unhygienic nature of used Beauty Products, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members are likely to be damaged by Defendant's routine practice of surreptitiously reselling used Beauty Products in the future because they may unknowingly purchase used Beauty Products that are contaminated with disease-causing pathogens. As a result, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members will be subjected to the risk of contracting serious illnesses, as was the case with the California woman who sued Sephora in 2015 claiming that she contracted the herpes simplex virus from used Beauty Products.

109.    On information and belief, Defendant's routine practice of surreptitiously reselling used Beauty Products to Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members arose from Defendant's corporate policy of placing a quota on the number of returned items that can be deemed to be "damaged."

110.    On information and belief, that policy was created, implemented, and enforced by Defendant's corporate managers who are located at Defendant's corporate headquarters in Illinois.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 24 of 40

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 25 of 40

111.  On information and belief, Defendant's corporate managers—who are located at Defendant's corporate headquarters in Illinois—became, and are, aware of the fact that used Beauty Products are routinely sold at Defendant's retail locations, and those corporate managers have failed to create, implement, and enforce appropriate remedial actions.

112.  Moreover, any future remedial policy intended to discontinue the sale of used Beauty Products at Defendant's retail stores will emanate from, and will be implemented and enforced by Defendant's corporate managers who are located at, Defendant's corporate headquarters in Illinois.

113.  In addition, when consumers—including Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members—unknowingly purchased, or will purchase, used Beauty Products from Defendant, their payments were, and will be, received at Defendant's corporate headquarters in Illinois.

114.  Defendant is knowingly and willfully engaging in the misrepresentations and omissions described herein. Indeed, Defendant knows that it is selling used Beauty Products to Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members, and that its misrepresentations and omissions will deceive Plaintiff, Class members, and Illinois Subclass members into purchasing used Beauty Products that they otherwise would not be willing to purchase.

115.  Plaintiff, on behalf of herself, the Injunctive Relief Class, and the Illinois Injunctive Relief Subclass seeks an order (1) enjoining Defendant from reselling used Beauty Products at its retail stores, and requiring Defendant to cease the deceptive and unfair practices described herein; and (2) awarding reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Injunctive Relief Class and Illinois Injunctive Relief Subclass, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Injunctive Relief Class and Illinois Injunctive Relief Subclass defined herein;

B.  Designating Plaintiff as representative· of the Injunctive Relief Class and Illinois Injunctive Relief Subclass, and her undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff, the Injunctive Relief Class, and the Illinois Injunctive Relief Subclass, and against Defendant;

D.  Enjoining Defendant's illegal, deceptive, and unfair conduct alleged herein;

E.  Awarding Plaintiff, the Injunctive Relief Class, and the Illinois Injunctive Relief Subclass reasonable attorney's fees and costs; and

F.  Granting all such further and other relief as the Court deems just and appropriate.

**COUNT III**
**Breach of Implied Warranty**
**(On behalf of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass)**

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 26 of 40

188.  Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

116.  Defendant, as the largest seller of Beauty Products in the United States, is a "merchant," as that term is defined by 810 ILCS 5/2-104(1) with respect to Beauty Products.

117.  At all times relevant hereto, there was in full force and effect a provision of the Illinois Commercial Code governing the implied warranty of merchantability. 810 ILCS 5/2314.

118.  The implied warranty of merchantability requires that goods would "pass without objection in the trade," "are of fair average quality," "are fit for ordinary purposes for which such goods are used," and "are adequately contained, packaged, and labeled." 810 ILCS 5/2-314(2).

119.  As set forth above, when consumers—such as Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members—purchase Beauty Products from retailers, such as Defendant, they expect that the Beauty Products (1) are new and unused, (2) will not be adulterated or contaminated with disease-causing pathogens, (3) will have packaging that is accurate, and free from alterations and tampering, and (4) will not subject them to a risk of contracting disease. Indeed, these consumer expectations are codified under Illinois and federal law. 21 U.S.C. § 331(a)-(c); 410 ILCS 620/3; 21 U.S.C. § 331(k); 410 ILCS 620/3.9.

120.    Consumers—such as Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members—would not purchase a particular Beauty Product if it did not meet the aforementioned expectations.

121.    Accordingly, in selling Beauty Products to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, Defendant impliedly warranted that those Beauty Products were merchantable, such that they were not previously used, adulterated, or contaminated with disease-causing pathogens, and had not been tampered with or resealed.

122.    Moreover, at all times relevant hereto, there was in full force an effect a provision of the Illinois Commercial Code governing the implied warranty of fitness for a particular purpose. 810 ILCS 5/2-315.

123.    The implied warranty of fitness for a particular purpose requires that goods be fit for a particular purpose when a seller knows that goods are being furnished for that purpose, and a buyer relies "on the seller's skill or judgment to select or furnish suitable goods." 810 ILCS 5/2-315.

124.    Defendant knew that Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members were purchasing its Beauty Products for cosmetic use, and that they were relying on Defendant to furnish Beauty Products in accordance with the aforementioned consumer expectations.

127.    Accordingly, in selling Beauty Products to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, Defendant impliedly warranted that those Beauty Products were suitable for the particular purpose of cosmetic use, and that they would be suitable for that purpose, such that they were not previously used, adulterated, or contaminated with disease-causing pathogens, and had not been tampered with or resealed.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 27 of 40

128.     Upon use, Beauty Products acquire dirt, disease-causing pathogens, and other filthy substances. As such, used Beauty Products are, by nature, adulterated cosmetics (410 ILCS 620/18), and subject users to a risk of contracting disease—as was the case with the California woman who sued Sephora in 2015 claiming that she contracted the herpes simplex virus from used Beauty Products.

129.     By selling used Beauty Products to consumers that were adulterated and contaminated with disease-causing pathogens, and that had been repackaged, resealed, and reconditioned, Defendant breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

130.     Defendant knew that the used Beauty Products it sold to consumers were previously used, adulterated, contaminated with disease-causing pathogens, and had been tampered with or resealed because Defendant's employees routinely engaged in the practices complained of herein at Defendant's instruction. Moreover, based on the fact that Defendant responded to the media reports disclosing the practices complained of herein, Defendant has actual knowledge that the used Beauty Products it sold to consumers were in breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

131.     Acting as reasonable consumers, Plaintiff, Damages Class members, the Ultamate Rewards Damages Class, and Illinois Damages Subclass members were unaware of these misrepresented warranties, and if they had been aware of the truth, they would not have purchased used Beauty Products from Defendant.

132.     Therefore, as a direct and proximate result of Defendant's breaches of those implied warranties, Plaintiff, Damages Class members, the Ultamate Rewards Damages Class, and Illinois Damages Subclass members, suffered economic damages in the form of monies spent to purchase used Beauty Products from Defendant.

133.     Plaintiff, on behalf of herself, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass seeks an order awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 28 of 40

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Damages Class, the Ultamate

Rewards Damages Class, and Illinois Damages Subclass, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass defined herein;

B.    Designating Plaintiff as representative of the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass, and her undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass, and against Defendant;

D.    Awarding Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass damages, in addition to reasonable attorney's fees and costs; and

E.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV
### Violation of the Illinois Food, Drug and Cosmetic Act
### (410 ILCS 620/1, *et seq.)*
### (On behalf of Plaintiff and the Classes)

134.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

135.    At all relevant times, the Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1, *et seq.,* was in full force and effect.

136.    The Beauty Products sold by Defendant are "cosmetics," as that term is defined by 410 ILCS 620/2.6.

137.    The IFDCA prohibits the "manufacture, sale or delivery, holding or offering for sale of any...cosmetic that is adulterated or misbranded," the "adulteration or misbranding of any...cosmetic," and "the delivery or proffered delivery thereof for pay or otherwise." 410 ILCS 620/3 (incorporating 410 ILCS 620(3.1, 410 ILCS 620/3.2, and 410 ILCS 620/3.3).

138.    "A cosmetic is adulterated" *if, inter alia,* it contains any "deleterious substance which may render it injurious to users," "consists in whole or in part of any filthy, putrid, or decomposed

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 29 of 40

substance," or "has been produced, prepared, packed or held under unsanitary conditions whereby it may have become contaminated with filth or whereby it may have been rendered injurious to health." 410 ILCS 620/18.

139.    "A cosmetic is misbranded" if, *inter alia*, "its labeling is false or misleading," its packaging contains an inaccurate "statement of the quantity of the contents," or "its container is so made, formed, or filled as to be misleading." 410 ILCS 620/19.  In addition, the IFDCA prohibits "the alteration...of the labeling of, or the doing of any other act with respect to a...cosmetic...while such article is held for sale (whether or not the first sale)...and results in such article being adulterated or misbranded." 410 ILCS 620/3.9.

140.    Upon use, Beauty Products acquire dirt, disease-causing pathogens, and other filthy substances.[19] As such, used Beauty Products are, by nature, adulterated cosmetics (410 ILCS 620/18), and subject users to a risk of contracting disease—as was the case with the California woman who sued Sephora in 2015 claiming that she contracted the herpes simplex virus from used Beauty Products.[20]

141.    By repackaging, resealing, and reconditioning used Beauty Products, Defendant further caused, and continues to cause, those Beauty Products to become adulterated, and also caused, and continues to cause, them to be misbranded.

142.    Defendant also caused, and continues to cause, used Beauty Products to be misbranded by failing to label them as salvaged, as required by 77 I1l.Admin.Code § 725.51.

143.    Accordingly, Defendant violated, and continues to violate, the foregoing provisions of the IFDCA by repackaging, resealing, and reconditioning used Beauty Products, and not labeling them as salvaged, before reselling those adulterated and misbranded Beauty Products to Plaintiff and members of the Classes.

---

[19] Today, *Beware Store Makeup Samples That May Harbor Harmful Bacteria, available* at: https://www.today.com/health/beware-store-makeup-samples-may-harbor-harmful-bacteria-t118860

[20] Today, *Woman Files Lawsuit Claiming Lipstick Sample Caused Cold Sores, available* at: https://www.today.com/health/lawsuit-claims-sephora-lipstick-samules-caused-herpes-t118296

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 30 of 40

144. "A private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons sought to be protected; (2) the plaintiff's injury is one intended to be prevented; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action is necessary to effectuate the purpose of the statute, *i.e., a* civil remedy is needed." *Reuben H. Donnelley Corp. v. Brazier,* 275 Ill.App.3d 300, 311 (1st Dist. 1995).

145. Here, Defendant's practice of surreptitiously reselling used Beauty Products to its customers created, and continues to create, a risk to public health, including the health of Plaintiff and members of the Classes.

146. As such, Plaintiff and members of the Classes have a private right of action under the IFDCA because its primary purpose is to protect public health, and "compliance with laws affecting the health of the community is a public concern of the highest magnitude." *See, Carty v. Suter Co., Inc.,* 371 Ill.App.3d 784, 789 (2nd Dist. 2007) (internal quotations omitted). Indeed, granting Plaintiff and members of the Classes a private right of action under the IFDCA is consistent with the underlying purpose of the IFDCA.

147. As a result of Defendant's deception, Plaintiff and members of the Classes purchased, or are at a risk of purchasing, used Beauty Products that they otherwise would not have been, or will not be, willing to purchase.

148. Therefore, as a direct and proximate result of Defendant's violations of the IFDCA, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, suffered economic damages in the form of monies spent to purchase used Beauty Products from Defendant.

149. Moreover, as a direct and proximate result of Defendant's violations of the IFDCA, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, suffered other non-economic damages in the form of emotional distress arising from the fact that they were deceived into purchasing used Beauty Products from Defendant that were unsanitary and unhygienic.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 31 of 40

150.   In addition, due to reasons such as brand loyalty, membership in Defendant's customer rewards program, or necessity, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass member, intend to shop at Defendant's retail stores in the future.

151.   Therefore, as long as Defendant continues to surreptitiously resell used Beauty Products to its customers, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members will be at a risk for harm because they may unknowingly purchase used Beauty Products, which will further subject them to the economic and non-economic damages described above.

152.   Plaintiff, on behalf of herself and the Classes seeks an order (1) enjoining Defendant from reselling used Beauty Products at its retail stores, and requiring Defendant to cease the deceptive and unfair practices described herein; and (2) awarding actual damages, punitive damages, interest, reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Classes defined herein;

B.   Designating Plaintiff as representative of the Classes, and her undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Classes, and against Defendant;

D.   Enjoining Defendant's illegal, deceptive, and unfair conduct alleged herein;

E.   Awarding Plaintiff and the Classes actual and punitive damages, in addition to reasonable attorney's fees and costs; and

F.   Granting all such further and other relief as the Court deems just and appropriate.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 32 of 40

## COUNT V
### Illinois Salvage Warehouse and Salvage Warehouse Store Act
### (240 ILCS 30/0.1, *et seq.*)
### (On behalf of Plaintiff and the Classes)

153.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

154.    At all relevant times, the Illinois Salvage Act, 240 ILCS 30/0.1, *et seq.,* was in full force and effect.

155.    The Beauty Products sold by Defendant are "cosmetics," as that term is defined by 240 ILCS 30/1.

156.    The Illinois Salvage Act provides that no cosmetic shall "be offered for sale at retail unless it complies with standards promulgated by the Department of Public Health." 240 ILCS 30/5.

157.    As authorized by 240 ILCS 30/8, the Illinois Department of Public Health ("IDPH") promulgated the following regulations with respect to the sale of cosmetics.

158.    Pursuant to IDPH regulations, to be "salvageable" under the Illinois Salvage Act, a cosmetic must not be "adulterated, contaminated, or misbranded." 77 Ill.Admin.Code § 725.20. In addition to adopting the IFDCA's definitions of "adulterated" and "misbranded"—which are set forth above—the IDPH deems a cosmetic "contaminated" if it contains any "deleterious substance which may render an item injurious to health." 77 Ill.Admin.Code § 725.20.

159.    If a cosmetic is "non-salvageable" under the Illinois Salvage Act, it may not be "sold or distributed," and must be "disposed of in a landfill." 77 Ill.Admin.Code § 725.60.

160.    If a cosmetic is "salvageable" under the Illinois Salvage Act, it must be "reconditioned prior to sale or distribution." 77 Ill.Admin.Code § 725.50. After reconditioning, a salvaged cosmetic must "be labeled, at a minimum, with the word 'salvaged' and" must "indicate on the label the date of salvaging." 77 Ill.Admin.Code § 725.51.

162.    Upon use, Beauty Products acquire dirt, disease-causing pathogens, and other filthy substances." As such, used Beauty Products are, by nature, adulterated cosmetics (410 ILCS

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 33 of 40

33

620/18), subject users to a risk of contracting disease—as was the case with the California woman who sued Sephora in 2015 claiming that she contracted the herpes simplex virus from used Beauty Products,'" and cannot be salvaged pursuant to 77 111.Admin.Code § 725.20.

163.    Accordingly, by selling previously used cosmetics, Defendant violated, and continues to violate, the provisions of the Illinois Salvage Act. 240 ILCS 30/5.

164.    Alternatively, even if used Beauty Products can be salvaged pursuant to 77 Ill.Admin.Code § 725.20, they still must be labeled as such. 77 111.Admin.Code § 725.51.

165.    Accordingly, by selling previously used cosmetics that are not labeled as being salvaged, Defendant violated, and continues to violate, the provisions of the Illinois Salvage Act. 240 ILCS 30/5.

166.    "A private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons sought to be protected; (2) the plaintiff's injury is one intended to be prevented; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action is necessary to effectuate the purpose of the statute, *i.e., a* civil remedy is needed." *Reuben H. Donnelley Corp. v. Brauer,* 275 111.App.3d 300, 311 (1st Dist. 1995).

167.    Here, Defendant's practice of surreptitiously reselling used Beauty Products to its customers created, and continues to create, a risk to public health— including the health of Plaintiff and members of the Classes—because used Beauty Products contain pathogens which can cause, and have caused, users to contract disease.[46] In addition, by not labeling used Beauty Products as being salvaged, Defendant created, and continues to create, a risk of confusion that the Illinois Salvage Act intends to prevent.

168.    As such, Plaintiff and members of the Classes have a private right of action under the Illinois Salvage Act because its primary purpose is to prevent the sale of cosmetics "unfit for human consumption." 240 ILCS 30/5. Indeed, granting Plaintiff and members of the Classes a private right of action under the Illinois Salvage Act is consistent with the underlying purpose of the Illinois Salvage Act.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 34 of 40

34

169.    As a result of Defendant's deception, Plaintiff and members of the Classes purchased, or are at a risk of purchasing, used Beauty Products that they otherwise would not have been, or will not be, willing to purchase.

170.    Therefore, as a direct and proximate result of Defendant's violations of the Illinois Salvage Act, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, suffered economic damages in the form of monies spent to purchase used Beauty Products from Defendant.

171.    Moreover, as a direct and proximate result of Defendant's violations of the Illinois Salvage Act, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members, suffered other non-economic damages in the form of emotional distress arising from the fact that they were deceived into purchasing used Beauty Products from Defendant that were unsanitary and unhygienic.

172.    In addition, due to reasons such as brand loyalty, membership in Defendant's customer rewards program, or necessity, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members, intend to shop at Defendant's retail stores in the future.

173.    Therefore, as long as Defendant continues to surreptitiously resell used Beauty Products to its customers, Plaintiff, Injunctive Relief Class members, and Illinois Injunctive Relief Subclass members will be at a risk for harm because they may unknowingly purchase used Beauty Products, which will further subject them to the economic and non-economic damages described above.

174.    Plaintiff, on behalf of herself and the Classes seeks an order (1) enjoining Defendant from reselling used Beauty Products at its retail stores, and requiring Defendant to cease the deceptive and unfair practices described herein; and (2) awarding actual damages, punitive damages, interest, reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 35 of 40

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Classes defined herein;

B.  Designating Plaintiff as representative of the Classes, and her undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff and the Classes, and against Defendant;

D.  Enjoining Defendant's illegal, deceptive, and unfair conduct alleged herein;

E.  Awarding Plaintiff and the Classes actual and punitive damages, in addition to reasonable attorney's fees and costs; and

**F.**  Granting all such further and other relief as the Court deems just and appropriate.

**COUNT VI**
**Strict Product Liability**
**(On behalf of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass)**

175.  Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

176.  Defendant, as the largest seller of Beauty Products in the United States, is in the business of selling Beauty Products to consumers.

177.  By repackaging, reselling, and reconditioning used Beauty Products, Defendant caused Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members to purchase Beauty Products contaminated with dirt, disease-causing pathogens, and other filthy substances.

178.  The used Beauty Products purchased by Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members contained the aforementioned contaminants when those used Beauty Products left Defendant's custody and

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 36 of 40

36

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 37 of 40

control—i.e., when they were purchased by Plaintiff, Damages Class members, and Illinois Damages Subclass members.

179. Despite having a legal duty to do so, Defendant failed to warn or disclose to customers—including Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members—that those used Beauty Products were contaminated with dirt, disease-causing pathogens, and other filthy substances.

180. Beauty Products contaminated with dirt, disease-causing pathogens, and other filthy substances are dangerous and unsafe for human consumption because they may cause illness or injury. For example, in 2015, a California woman sued another major retailer of Beauty Products—Sephora—claiming that she contracted the herpes simplex virus after using used Beauty Products at a Sephora store.

181. Due to the unsanitary and unhygienic nature of used Beauty Products, users also may incur emotional distress arising from the fact that they were subjected to contaminated Beauty Products and the accompanying risk of disease. Indeed, a person applying used Beauty Products "could literally be applying and smearing someone else's fecal matter directly onto [her] lips."[21]

182. Therefore, the used Beauty Products that Defendant sold to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members were in a defective and unreasonably dangerous condition.

183. Due to Defendant's misrepresentations and omissions described herein, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members had no ability to ascertain whether the Beauty Products that they purchased were contaminated with dirt, disease-causing pathogens, and other filthy substances.

184. As a result of their use of the contaminated Beauty Products that they purchased from Defendant, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and

_____

[21] https://www.todav.com/health/beware-store-makeup-samDles-mav-harbor-harmful-bacteria-tl 18860

Illinois Damages Subclass members incurred emotional distress arising out of the fact that they were subjected to the risk of contracting disease and were deceived into applying a filthy substance to their bodies.

185.  Defendant is strictly liable for the harm caused to Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members resulting from their use of contaminated Beauty Products.

186.  Therefore, as a direct and proximate result of Defendant's sale of used Beauty Products, and its failure to warn Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members of the risks of using used Beauty Products, Plaintiff, Damages Class members, Ultamate Rewards Damages Class members, and Illinois Damages Subclass members suffered non-economic damages in the form of emotional distress, and economic damages in the form of monies spent to purchase used Beauty Products from Defendant.

187.  Plaintiff, on behalf of herself, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass seeks an order awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff, individually and on behalf of the Damages Class and Illinois Damages Subclass, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Damages Class and Illinois Damages Subclass defined herein;

B.  Designating Plaintiff as representative of the Damages Class and Illinois Damages Subclass, and her undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff, the Damages Class, and the Illinois Damages Subclass, and against Defendant;

D.  Awarding Plaintiff, the Damages Class, and the Illinois Damages Subclass damages, in addition to reasonable attorney's fees and costs; and

E.  Granting all such further and other relief as the Court deems just and appropriate.

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 38 of 40

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 39 of 40

## COUNT VII
### Restitution/Unjust Enrichment
### (On behalf of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass)

189.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

190.    Defendant has acquired and retained money belonging to Plaintiff, Damages Class members, the Ultamate Rewards Damages Class members, and Illinois Damages Subclass members as a result of its wrongful conduct—i.e., its practice of surreptitiously selling used Beauty Products to consumers. Each individual sale nets Defendant profit at the expense of the consumer.

191.    Defendant appreciates or knows of such a benefit.

192.    Under the principles of equity, Defendant should not be allowed to keep the money belonging to Plaintiff, Damages Class members, the Ultamate Rewards Damages Class members, and Illinois Damages Subclass members because Defendant has unjustly received it as a result of its unlawful actions described herein.

192.    As described above, Plaintiff, Damages Class members, the the Ultamate Rewards Damages Class members, and Illinois Damages Subclass members have suffered damages as a direct result of Defendant's conduct.

193.    Plaintiff, on behalf of herself, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass seeks restitution for Defendant's unlawful conduct, as well as interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass, prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.,* and certifying the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass defined herein;

B.      Designating Plaintiff as representative of the Damages Class, the Ultamate Rewards Damages Class, and Illinois Damages Subclass, and her undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass, and against Defendant;

D.  Awarding Plaintiff, the Damages Class, the Ultamate Rewards Damages Class, and the Illinois Damages Subclass restitution damages, in addition to reasonable attorney's fees and costs; and

E.  Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: March 7, 2018

ELECTRONICALLY FILED
3/7/2018 9:06 AM
2018-CH-03006
PAGE 40 of 40

Respectfully submitted,

**POMERANTZ LLP**

By: /s/*Louis C. Ludwig*
Patrick V. Dahlstrom
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
Email: pdahlstrom@pomlaw.com
       lcludwig@pomlaw.com

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: gfbruckner@pomlaw.com
       sjadams@pomlaw.com

*Attorneys for Plaintiffs*